FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 24, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SECURITY NATIONAL
INSURANCE COMPANY,

                    Plaintiff,

          v.

CONSTRUCTION ASSOCIATES OF
SPOKANE INC., MARK WILSON,
and JENNIFER WILSON,

                    Defendants.

No.    2:20-cv-00167-SMJ

**ORDER REGARDING SUMMARY
JUDGMENT MOTIONS**

      Before the Court are Plaintiff Security National's Motion for Partial Summary Judgment re 2019 Certificate of Insurance, ECF No. 134; Plaintiff Security National's Motion for Partial Summary Judgment (Bad Faith), ECF No.157; and Defendants Mark and Jennifer Wilsons' Motion for Summary Judgment, ECF No. 162. Also pending are number of motions to strike, including the Wilsons' motion to strike portions of Security National's first summary judgment motion, as well as Defendants' motions to strike and for sanctions regarding the Declaration of James Leondiris, ECF No. 160. ECF Nos. 137, 185, 189. After reviewing the file and hearing oral argument from the parties at two

hearings, the Court is fully informed. Finding that Security National is bound by the 2019 Certificate of Insurance issued by Security National's authorized representative to Defendant Construction Associates, the Court denies Security National's motions, denies the motions to strike and for sanctions, and grants the Wilsons' partial summary judgment.

## BACKGROUND

**A.    The August 2016 Accident**

Construction Associates of Spokane is a general contractor that had a project at the Paulsen Building in Spokane. ECF No. 21 at 11. Construction Associates hired a subcontractor, Merit Electric, for whom Mark Wilson worked. *Id.* at 11, 13.

On August 20, 2016, Mark Wilson was seriously injured while working at the Paulson Center. ECF No. 1 at 4. Nearly three years later, he and Jennifer Wilson sued Construction Associates, along with other defendants, in Spokane County Superior Court. *Wilson v. Diamond Plaza, LLC*, No. 19-2-03675-32 (Spokane Cnty. Sup. Ct.); *see also* ECF No. 159-1 at 28–40. In the suit, the Wilsons claimed damages for medical expenses, pain and suffering, mental anguish and emotional distress, loss of enjoyment of life, loss of wages, and loss of consortium. ECF No. 159-1 at 39.

//

//

**B.      Construction Associates' Tender**

On October 3, 2019, Construction Associates' counsel sent a tender letter to Merit Electric's broker, Alliant Insurance Services, Inc. *Id.* at 15–40. Alliant forwarded the letter to Security National on or about October 8, 2019. ECF No. 158 at 2. The tender letter included (1) a Certificate of Insurance issued by Alliant to Construction Associates on September 3, 2019; (2) an unsigned single-page Contractor Information Sheet that referred to the Security National Commercial General Liability policy issued to Merit and covering April 3, 2013, to April 2, 2014; (3) a price quote from Merit dated August 9, 2016, for electrical work at the Paulsen Building; (4) a copy of the Summons and Complaint filed by the Wilsons against Construction Associates in Spokane County Superior Court, and (5) Construction Associates' two-page October 8, 2013 Subcontractor Agreement with Merit Electric, which has governed the relationship between Construction Associates and Merit from 2013 to the present. ECF No. 159-1 at 15–40. The Subcontractor Agreement required, in part:

> **Certificate of Insurance naming Construction Associates of Spokane, Inc. as Additional Insured.**
>
> <u>Insurance</u>: Subcontractor shall maintain in full force and effect at all times a comprehensive liability policy in such limits ($1,000,000 minimum covering: Bodily Injury and Property Damage, each occurrence and $2,000,000 Aggregate), business auto policy with limit of $1,000,000 combined single limit, and employers liability with limits of $1,000,000/$1,000,000/$1,000,000. Subcontractor shall furnish certificates of insurance to Contractor upon execution of this

1

2

3

4

agreement as evidence of the above insurance coverage. Subcontractor will be responsible for the additional insurance premium assessed Contractor for failure to comply with the above terms and conditions. The certificate shall provide for a 30-day notice of cancellation to Contractor. Subcontractor shall provide insurance certificates naming Contractor as an additional insured.

*Id.* at 21.

5

6

7

8

9

10

Merit's insurance policy for the 2016–17 period with Security National included an "Additional Insured" endorsement that conferred additional insured status to "any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy." ECF No. 139-6 at 2.

11

12

13

14

15

16

17

18

19

20

Consistent with the Subcontractor Agreement, Construction Associates received numerous Certificates of Insurance beginning in 2013, *see* ECF No. 140-2, but the certificate most relevant to these motions is the 2019 Certificate of Insurance, issued by Alliant to Construction Associates, *see* ECF No. 159-1 at 18. Briefly, Construction Associates purportedly knew it had received Certificates of Insurance but had trouble finding the Certificate of Insurance for 2016. ECF Nos.140–41. So, on September 3, 2019—approximately two weeks after the Wilsons filed their suit in Spokane County Superior Court—Construction Associates contacted Merit Electric's broker, Alliant, and requested a Certificate of Insurance that would show that Merit Electric was covered from April 2, 2016, to

ORDER REGARDING SUMMARY JUDGMENT MOTIONS – 4

April 2, 2017, and that Construction Associates was an additional insured. ECF No. 159-3 at 32–37. The same day, Alliant responded with a Certificate of Insurance that was for the relevant period but specified coverage for work done on the Couer d'Alene Courthouse Plaza. *See id.* at 35.[1] Construction Associates then asked whether there were other Certificates of Insurance or if the Couer d'Alene Courthouse Certificate in fact covered projects in addition to the Courthouse project. ECF No. 159-3 at 35. Prior to responding, Alliant's representative conferred with Cathie Hamlin, an employee at Merit who handles insurance issues, and Ms. Hamlin confirmed that Alliant could give a Certificate of Insurance that was not project specific. ECF No. 152-1 ("[B]lanket any or all projects for them is fine."). Alliant then delivered the *never before produced* 2019 Certificate of Insurance, which purported to reflect blanket additional insured status for the insurance period during which Mark Wilson was injured. ECF No. 139-8 at 2.

## C.    The First Investigation and Denial

On October 11, 2019, Security National's claims adjuster, John Johnstone[2] sent an e-mail to Merit Electric. ECF No. 224 at 6. He wrote:

> I request that you advise if an actual Additional Insured endorsement was issued. The Certificate that was produced is for information only

---

[1] In fact, according to Construction Associates, the Coeur d'Alene Courthouse Plaza project had concluded in 2014. ECF No. 18 at 11.

[2] For purposes of this Order, the Court follows the parties' practice and makes no distinction between Security National and AmTrust North America, the latter of which actually employs Mr. Johnstone and his replacement, James Leondiris.

ORDER REGARDING SUMMARY JUDGMENT MOTIONS – 5

and confers no rights. The contract documents supplied lack specificity as to whether Merit was required to name Construction Associates of Spokane as an additional insured on the policy. Rather, it simply requires a Certificate of Insurance naming it as an additional insured. While this may seem like a distinction without a difference, the Certificate states on its face that it does not change the policy and that an endorsement may need to be issued. Hence, I need to locate said endorsement assuming it exists.

*Id.*

On October 13, 2019, Merit, responded, "The Certificate of Insurance did not contain an endorsement. The original request in 2013 was asking us to list the holder as additional insured but did not have a contract nor request endorsements. It was renewed this way in the year referenced in the claim." *Id.* at 7.

Next, on October 18, 2019, Mr. Johnstone sent a letter to Construction Associates. ECF No. 164-1 at 88. In the letter, Mr. Johnstone acknowledges receipt of the tender, noted that it had "insufficient information to determine if there is any obligation to defend or indemnify," and claimed it was "commencing our investigation into this matter." *Id.* Mr. Johnsons also noted that "[w]e may also refer this matter to coverage counsel for review and opinion as to AmTrust's potential obligations." *Id.* In a claim note from the same day, Mr. Johnstone wrote that Security National would "likely need an opinion from [Washington] coverage counsel." ECF No. 159-1 at 12.

Later, on or about November 5, 2019, the claim was transferred from Mr. Johnstone to James Leondiris as claims adjuster. ECF No. 158 at 2. Claim notes

ORDER REGARDING SUMMARY JUDGMENT MOTIONS – 6

from October 22 and November 5, 2019, again note the need for Washington state coverage counsel. ECF No. 159-1 at 2. On November 13, 2019, Mr. Leondiris entered a claim note saying the Certificate of Insurance is not binding and drafted a letter denying tender of defense. *Id.* at 42–43. On December 3, 2019, Mr. Leondiris, unaware of the Washington Supreme Court's October 10, 2019 decision in *T-Mobile USA Inc. v. Selective Insurance Company of America*, 450 P.3d 150 (Wash. 2019), which addressed the effect of an agent's representations in certificates of insurance, sends the denial letter to Construction Associates. *See* ECF No. 159-2.

While it is undisputed that Mr. Leondiris had reviewed the tender letter from Construction Associates before denying tender, the extent of his investigation is in dispute. Reviewing the claim file, Mr. Leondiris noted that Mr. Johnstone had reviewed the 2016 Policy and underwriting documents and determined there was no endorsement in the 2016 Policy listing Construction Associates as an additional insured. ECF No. 158 at 4. He also noted that Mr. Johnstone had contacted the Named Insured, Merit, and its broker, Alliant, on October 11, 2019. ECF No. 158 at 4. "Alliant's response informed Security National that, according to the broker: (1) there was no Certificate of Insurance issued to [Construction Associates] for the 2016 Policy with an [Additional Insured] endorsement; and (2) there was no contract between [Construction Associates] and Merit that required [additional insured] coverage for [Construction Associates]." ECF No. 158 at 4. Mr. Leondiris

1    also reviewed and analyzed Construction Associate's tender letter and the

2    documents attached thereto. ECF No. 158 at 4. Mr. Leondiris also did enough

3    research to encounter WAC 284-30-355(7)(b): "A certificate of insurance does not

4    confer new or additional rights beyond what the referenced policy of insurance

5    provides." ECF No. 159-1 at 43. Based on this provision, Mr. Leondiris concluded

6    that under Washington law, the 2019 Certificate of Insurance did not confer

7    additional insured status to Construction Associates. He did no further legal

8    research prior to the December 3, 2019 denial, he did not research case law, he had

9    not hired Washington state coverage counsel, and he was still unaware of the *T-*

10   *Mobile USA* decision directly addressing the effect of an agent's representations in

11   Certificates of Insurance.

12        On December 5, 2019, counsel for Construction Associates spoke and

13   e-mailed with Mr. Leondiris regarding the denial. *See* ECF No. 136-1 at 61.

14   Specifically, counsel informed Mr. Leondiris of the Washington Supreme Court's

15   decision in *T-Mobile USA* and asked that Security National reconsider the denial in

16   light of the case's holding that "an insurance company's agent who makes an

17   authoritative representation binds the insurance company, even when that specific

18   representation is transmitted via a certificate of insurance and accompanied by

19   general disclaimers." ECF No. 136-1 at 61 (quoting *T-Mobile USA*, 150 P.3d at

20   158).

ORDER REGARDING SUMMARY JUDGMENT MOTIONS – 8

**D.    Second Investigation and Denial**

Over the next two months, Mr. Leondiris was in contact with Merit, Alliant, and Construction Associates. ECF No. 158 at 11–12. Then, on February 19, 2020, more than four months after receiving Construction Associates' tender, Mr. Leondiris informed Construction Associates that it had decided to retain Washington coverage counsel to consider the *T-Mobile USA* decision. *Id.* at 13. Mr. Leondiris then continued to investigate the claim. For example, in late March 2020, he sent letters to Merit, Alliant, and Construction Associates' counsel requesting additional information that might help establish Construction Associates as an additional insured. *Id.* at 14. Construction Associates' response included additional documents that were not previously provided with the initial tender letter, including additional pages relating to the 2013 subcontract between Merit and Construction Associates, as well as dozens of Certificates of Insurance. *Id.* at 14–15.

Finally, on April 29, 2020, Security National affirmed its denial of defense in a letter sent to Construction Associates. ECF No. 164-1 at 182–84. In that letter, Security National stated that Alliant had no authority to issue "*any* Certificate of Insurance for *any* Security National insured years after the policy expired." *Id.* at 184. Moreover, the letter continued, *T-Mobile USA* was inapplicable to this coverage dispute because the 2019 Certificate of Insurance was issued after the

policy period, and Construction Associates could not have relied on the representation contained in the certificate. *Id.*

**E.    Lawsuit**

On April 30, 2020, the day after affirming its denial of defense, Security National filed this suit against Construction Associates, seeking (1) a declaration that Construction Associates is not covered by the insurance policy, (2) damages for material misrepresentations, and (3) damages for violation of RCW 48.01.030. ECF No. 1. Next, Defendants informed the Court that Construction Associates had assigned its rights to bring certain claims against Plaintiff to the Wilsons, and the Court granted the Wilsons leave to intervene. ECF No. 19. As assignees of the claims held by Construction Associates, the Wilsons filed counterclaims against Security National, including claims for breach of contract, negligence, violations of the Washington Consumer Protection Act, RCW 19-86, *et seq.*, violations of the Washington Insurance Fair Conduct Act, RCW 48.30.015, breach of the duty of good faith, coverage by estoppel, and damages/fees pursuant to the Olympic Steamship doctrine. ECF No. 21

**LEGAL STANDARD**

The Court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the

outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of showing no genuine dispute of material fact exists because a reasonable jury could not find in favor of the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 n.10, 587 (1986). If the moving party makes this showing, the nonmoving party then bears the burden of showing a genuine dispute of material fact exists because reasonable minds could differ on the result. *See Anderson*, 477 U.S. at 248–51; *Matsushita Elec. Indus.*, 475 U.S. at 586–87.

The nonmoving party may not rest upon the mere allegations or denials of its pleading and must instead set forth specific facts, and point to substantial probative evidence, tending to support its case and showing a genuine issue requires trial resolution. *See Anderson*, 477 U.S. at 248–49. The Court must enter summary judgment against the nonmoving party if it fails to make a showing sufficient to establish an element essential to its case and on which it would bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322.

In ruling on a summary judgment motion, the Court must view the evidence in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S.

ORDER REGARDING SUMMARY JUDGMENT MOTIONS – 11

650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

Thus, the Court must accept the nonmoving party's evidence as true and draw all

reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255. The Court may

not assess credibility or weigh evidence. *See id.*

## DISCUSSION

### A.    Security National is Not Entitled to Summary Judgment Regarding the 2019 Certificate of Insurance

Plaintiff Security National moves for partial summary judgment regarding

the 2019 Certificate of Insurance. ECF No. 134. Specifically, Security National

seeks an order "concluding as a matter of law, and as a matter of fact (based on the

recent admissions of [Construction Associates] and its defense counsel) that the

2019 Certificate of Insurance issued by Merit Electric's broke (Alliant) to

Construction Associates of Spokane . . . does not provide 'additional insured'

covered for Construction Associates under the Policy issued by Security National

to Merit Electric." *Id.* at 1–2. Security National's arguments on this first summary

judgment motion boil down to this: Defendants must show that Construction

Associates relied on the 2019 Certificate of Insurance, they cannot make such a

showing, and, regardless, recovery based on the 2019 Certificate of Insurance is

barred by the known-loss rule. As explained in more detail below, the Court

disagrees that a showing of reliance is required here and finds that Security National

waived application of the known-loss doctrine by failing to assert it as an

1    affirmative defense. Given these rulings, the Court also denies the Wilson's motion

2    to strike portions of Security National's summary judgment motion.

3        **1.    Reliance**

4        Central to the parties' dispute here is *T-Mobile USA v. Selective Ins. Co. of*

5    *Am.*, 450 P.3d 150 (Wash. 2019), which concerned an insurance dispute between

6    T-Mobile USA Inc. and Selective Insurance Company of America. After T-Mobile

7    USA was sued over damage to a building caused by one of its cellular antennae

8    towers, a dispute arose over whether T-Mobile USA was entitled to coverage as an

9    additional insured under a Selective insurance policy taken out by a contractor that

10   helped construct the tower. *Id.* It was clear the insurance policy covered only

11   T-Mobile NE, not T-Mobile USA, which are distinct legal entities. *Id.* at 152–53.

12   Nonetheless, T-Mobile USA argued that because Selective's broker agent had

13   provided T-Mobile USA with annual Certificates of Insurance indicating coverage

14   for T-Mobile USA as an additional insured, Selective was bound to cover T-Mobile

15   USA when it tendered a defense. *See id.* at 154.

16       After a federal district court granted Selective summary judgment, the case

17   reached the Ninth Circuit Court of Appeals. *T-Mobile USA Inc. v. Selective Ins. Co.*

18   *of Am.*, 908 F.3d 581, 584 (9th Cir. 2018). There, the Ninth Circuit concluded that

19   the agent broker had acted with apparent authority in issuing the Certificates of

20   Insurance, but found that it was confronted with

ORDER REGARDING SUMMARY JUDGMENT MOTIONS – 13

two competing principles under Washington insurance law that are at loggerheads here. The first is that under Washington law, "an insurance company is bound by all acts, contracts, or representations of its agent, whether general or special, which are within the scope of the agent's real or apparent authority." *Chicago Title Ins. Co. v. Wash. State Office of Ins. Comm'r*, 309 P.3d 372, 379 (Wash. 2013) (quoting *Pagni v. N.Y. Life Ins. Co.*, 23 P.2d 6, 16 (Wash. 1933)).

The second is that under Washington law, "the purpose of issuing a [Certificate of Insurance] is to inform the recipient thereof that insurance has been obtained." *Postlewait Constr., Inc. v. Great Am. Ins. Cos.*, 720 P.2d 805, 807 (Wash. 1986). Accordingly, under Washington law, a [Certificate of Insurance] is *not* the functional equivalent of an insurance policy, and it therefore *cannot* be used to amend, extend, or alter the coverage provisions of an insurance policy. *See id.*; *Int'l Marine Underwriters v. ABCD Marine, LLC*, 267 P.3d 479, 484 (Wash. Ct. App. 2011).

*T-Mobile USA*, 908 F.3d at 585 (alteration in original). The Ninth Circuit panel therefore certified a question to the Washington State Supreme Court: "Under Washington law, is an insurer bound by representations made by its authorized agent in a certificate of insurance with respect to a party's status as an additional insured under a policy issued by the insurer, when the certificate includes language disclaiming its authority and ability to expand coverage?" *Id.* at 588. The panel also clarified that it did "not intend [its] framing of this question to restrict the Washington Supreme Court's consideration of any issues that it determines are relevant" and noted that "[t]he Washington Supreme Court may, in its discretion, reformulate the question." *Id.* (citation omitted).

The Washington Supreme Court answered that "where: (1) the Ninth Circuit has already ruled that the agent acted with apparent authority, but (2) that agent's representation turned out to be inconsistent with the policy, and (3) the certificate included additional text broadly disclaiming the certificate's ability to 'amend, extend or alter the coverage afforded by' the policy," "the answer is yes: an insurance company is bound by the representation of its agent in those circumstances." *T-Mobile*, 450 P.3d at 416. "Otherwise, an insurance company's representations would be meaningless and it could mislead without consequence." *Id.*

In reaching that answer, the Washington Supreme Court reiterated the longstanding "general rule" in Washington:

> an insurance company is bound by all acts, contracts, or representations of its agent, whether general or special, which are within the scope of [the agent's] real or apparent authority notwithstanding they are in violation of private instructions or limitations upon [the agent's] authority, of which the person dealing with [the agent], acting in good faith, has neither actual nor constructive knowledge.

*Id.* at 420 (quoting *Pagni v. N.Y. Life Ins. Co.*, 23 P.3d 6 (1933)). Given this rule, under Washington law, where Selective's agent acted with apparent authority when it issued the certificate to T-Mobile, the insurance company was bound by the agent's representation. *Id.* at 421.

Reliance comes up briefly both in the majority opinion and in the dissent, but neither establishes a reliance requirement. In the majority opinion, the court noted

that Selective had argued that T-Mobile USA's "alleged reliance on the representation . . . was unreasonable," given that T-Mobile USA approved T-Mobile NE's contract with the contractor that "explicitly stated that T-Mobile USA was not a party to the contract." *Id.* But the court rebuffed this argument:

> But the Ninth Circuit has already ruled that Selective's agent acted with apparent authority. That ruling conclusively resolves this argument. Apparent authority "depend[s] upon objective manifestations made by the principal." *King v. Riveland*, 886 P.2d 160 (1994) (citing *Smith v. Hansen, Hansen & Johnson, Inc.*, 818 P.2d 1127 (1991)). Those objective manifestations by the principal "must cause the [third party] to actually, or subjectively believe, that the agent has authority to act for the principal" and "be such that the [third party's] actual, subjective belief is objectively reasonable." *Id.* (emphasis added) (citing *Smith*, 818 P.2d 1127). Thus, in ruling that the agent acted with apparent authority, the Ninth Circuit necessarily decided that T-Mobile USA's belief that the agent was authorized to issue a certificate naming it as an additional insured was "objectively reasonable." T-Mobile USA's objectively reasonable belief that the agent had authority to issue the certificate necessarily makes its reliance on that certificate reasonable.
>
> Accordingly, under the general rule, Selective is bound by the representations that its agent made to T-Mobile USA when the agent issued the certificate of insurance.

*T-Mobile USA*, 450 P.3d at 154–55. To be sure, the above-quoted passages allude to T-Mobile USA's reliance, but reliance is unnecessary to the holding. Instead, the court is refuting an attack Selective raised at every level of the litigation—that T-Mobile USA knew at all relevant times that it was not an additional insured. In rebuttal, the Washington Supreme Court notes that the Ninth Circuit already found

1    apparent authority, resolving the question of *reasonableness*, and that this was

2    sufficient to bind Selective to the representations in the Certificate of Insurance.

3         Tellingly, Security National principally relies on language in the dissent to

4    argue that the Court should apply a reliance element here. Briefly, the dissent argued

5    that Certificates of Insurance were "informational documents only" and "cannot

6    supplant a policy that does not award coverage." *Id.* at 428. The dissent then brings

7    up reliance in the context of disagreeing with a different theory of relief—estoppel:

8         Accordingly, I disagree with the majority that T-Mobile USA's
         certificates of insurance take precedence over an insurance policy that
9         simply does not cover T-Mobile USA. **Nor** would I apply equitable
         estoppel principles in this case. *Robinson v. City of Seattle*, 830 P.2d
10        318 (1992). Equitable estoppel requires (1) a party's
         admission, statement, or act inconsistent with its later claim, (2)
11        reasonable reliance on that act by another party, and (3) injury to the
         relying party. *Id.* Assuming the insurance agent here acted as an agent
12        for Selective Insurance, T-Mobile USA did not "reasonably" rely on
         the certificates. The record indicates T-Mobile USA believed the
13        certificates provided coverage based on one declaration. 2 ER at 121-
         24 (declaration of insurance and claims manager Lisa Bauer). The
14        certificates' disclaimers clearly stated the documents did not confer any
         "rights" or "amend, extend or alter" the terms of the policy. *E.g.*, *Ala.*
15        *Elec. Coop., Inc. v. Bailey's Constr. Co.*, 950 So. 2d 280, 285–86 (Ala.
         2006) (holding it unreasonable to rely on a certificate of insurance to
16        confer coverage based on its disclaimer language). And T-Mobile USA
         is a sophisticated business entity with extensive experience dealing
17        with insurance matters.

18        This is not to say that equitable estoppel could never be applicable
         when a certificate is alleged to provide more coverage than an
19        underlying policy where a party can show reasonable reliance. That is
         not the case here

20    *Id.* at 430–31 (emphasis added).

ORDER REGARDING SUMMARY JUDGMENT MOTIONS – 17

It is clear that the dissent transitioned from the majority's holding to an alternative theory of estoppel and expressing why any reliance—an element in the estoppel analysis—would not have been reasonable under the circumstances.  This reading makes particular sense in light of T-Mobile USA's colloquy at oral argument that the justices could rule in T-Mobile USA's favor is one of two ways: (1) by issuing a decision making a general statement about the effect of Certificates of Insurance made by authorized agents or (2) by issuing a narrower ruling based on the doctrine of estoppel. *See* Washington State Supreme Court Oral Arguments, https://tvw.org/video/washington-state-supreme-court-2019051069/?eventID=2019051069 (last visited March 23, 2022). For this reason, and because the Court should be cautious not to place too heavy a weight on a dissenting opinion's characterization of the majority's holding, the Court finds Security National's arguments regarding the dissent unpersuasive.

Ultimately, the Court finds that the Washington Supreme Court's majority opinion is clear. As it repeats throughout the decision: "an insurance company's agent who makes an authoritative representation binds the insurance company, even when that specific representation is transmitted via a certificate of insurance and accompanied by general disclaimers. *T-Mobile USA*, 450 P.3d at 158. Moreover, as that court emphasized, enforcing those authorized representations is good public policy: "it provides the principal with an additional incentive to ensure that the

agent's representations—made in person, on the phone, or in writing—are true." *Id.*
at 157. This Court declines to undermine those determinations by adding a reliance
requirement to the Washington Supreme Court's clear pronouncement.

### 2.    The Known-Loss/Risk Doctrine

The "known-risk" defense "is premised on the principle that an insured
cannot collect on an insurance claim for a loss that the insured subjectively knew
would occur at the time the insurance was purchased." *Public Utility Dist. No. 1 of
Klickitat Cty. v. Int'l Ins. Co.*, 881 P.2d 1020, 1030 (Wash. 1994). "To prevail on
the defense, the court must find the insured expected a specific occurrence before it
obtained insurance coverage. This is ordinarily a question of fact, and summary
judgment is improper when the scope of the insured's knowledge is unresolved."
*Mut. of Eumclaw Ins. Co. v. USF Ins. Co.*, 153 P.3d 877, 883 (Wash. App. 2007),
*aff'd*, 191 P.3d 866 (Wash. 2008). "[T]he insurer has the burden of proving that the
insured knew the particular loss would occur." *Port of Longview v. London Mkt.
Insurers*, 197 Wash. App. 1018, at *9 (Wash. App. 2016) (citing *Alum. Co. of Am.
v. Aetna Cas. & Surety Co.*, 998 P.2d 856 (2000).

As an initial matter, the Court must determine whether Security National was
required to plead the defense in its answer, which it did not. *See* ECF No. 23. "In
responding to a pleading, a party must affirmatively state any . . . affirmative
defense." Fed. R. Civ. P. 8(c)(1). Affirmative defenses "deny [a] plaintiff's right to

ORDER REGARDING SUMMARY JUDGMENT MOTIONS – 19

recover, even if the allegations of the complaint are true." *G & G Closed Circuit Events, LLC v. Nguyen*, No. 10-CV-00168-LHK, 2010 WL 3749284, at *5 (N.D. Cal. Sept. 23, 2010). In other words, affirmative defenses "plead matters extraneous to the plaintiff's prima facie case, which deny the plaintiff's right to recover." *Pertz v. Heartland Realty Investors, Inc.*, No. 19-cv-06330-CRB, 2020 WL 95636, at *1 (N.D. Cal. Jan 8, 2020). An answer containing an affirmative defense must plead "sufficient factual matter to state a defense that is 'plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Here, Security National seeks to use the known-loss doctrine to deny recovery even if the allegations in the Defendants' counterclaims are true. Accordingly, the doctrine is an affirmative defense that must be sufficiently pleaded in Security National's answer. *See Newmont USA Ltd. v. Am. Hom. Assur. Co.*, 795 F. Supp. 2d 1150, 1162 (E.D. Wash. 2011) ("The 'known loss' defense is a public policy-based affirmative defense…."). As such, the argument is waived and not properly before the Court.

In any event, Security National would not be entitled to summary judgment on this issue. When Construction Associates tendered, it purportedly did so based on a number of relationships and representations, not solely based on the 2019 Certificate of Insurance. For example, the tender was also purportedly based the Subcontractor Agreement governing the relationship between Construction

Associates and Merit Electric and the other certificates of insurance that had been issued to Construction Associates since 2013. Given that Construction Associates also relied on these representations, it could not be said to have "expected a specific occurrence before it obtained insurance coverage." *Mut. of Enumclaw*, 153 P.3d at 882.

### 3.    Motion to Strike

Given that the Court denies Security National's motion, the Court denies as moot the Wilson's request that the Court strike portions of Security National's partial summary judgment motion as inadmissible speculation. But even if the motion to strike was not moot, the Court would deny the motion.

Under Rule 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. "Rule 602 requires any witness to have sufficient memory of the events such that she is not forced to 'fill[ ] the gaps in her memory with hearsay or speculation.'" *United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015) (quoting 27 Charles Alan Wright et el., Federal Practice & Procedure Evidence § 6023 (2d ed. 2007)). Witnesses are not "permitted to speculate, guess, or voice suspicions." *Id.* (quoting § 6026). But "personal knowledge includes opinions and inferences grounded in observations and experience." *Id.* Lay witnesses may testify about inferences pursuant to Rule 701:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

*Whittemore* is instructive here. At Whittemore's trial, one witness testified that, given his personal and professional relationship with Whittemore, he would have made a contribution to the senator's campaign if asked by Whittemore to do so. *Whittemore*, 776 F.3d at 1082. The Ninth Circuit determined that the testimony by was not impermissibly speculative or was similarly harmless. *Id.*

Here, the objected-to statements were not self-serving and addressed what the declarant would personally have done had they had they had slightly more/different information—(1) Mr. Stocker, defense counsel for Construction Associates, says he would have tendered the Wilsons' claim to Security National using the 2016 Certificate of Insurance if he knew of its existence, instead of using the 2019 Certificate of Insurance; (2) Ms. Drew Hoskins of Alliant said that she would not have issued the 2019 Certificate of Insurance if she knew why it was being requested; and (3) Ms. Hamlin, an administrator at Merit, testified that, had she known why Construction Associates was asking for the 2019 Certificate of Insurance to be issued, she would have deferred to Merit's CFO. *See* ECF No. 134.

As with the witness in *Whittemore*, these statements are admissible and are not unduly speculative.

**B.    Cross-Motions for Summary Judgment**

Having resolved Security National's first motion for summary judgment, the Court turns to the cross motions for summary judgment regarding bad faith under the Consumer Protection Act, RCW 19.86 *et. seq.*, and under the Insurance Fair Conduct Act, ECW 48.30.015. Having already decided that *T-Mobile USA* does not require a showing of reliance for an authorized agent's representation to find an insurer, the motions become simpler, and the Court has little trouble finding that, even with the facts viewed in the light most favorable to Security National, Defendants are entitled to summary judgment that Security National acted in bad faith in denying Construction Associates tender of defense.

**1.    The Duty to Defend**

"Under Washington law, an insurer owes its insured two primary duties: the duty to indemnify and the duty to defend." *Osborne Constr. Co. v. Zurich Am. Ins. Co.*, 356 F. Supp. 3d 1085, 1091 (W.D. Wash. 2018) (citing *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 696 (2010)). The duty to defend is much broader than the duty to indemnify, and "is triggered at the time an action within the terms of the policy is initiated against the insured." *Id.*

1    "The duty to defend is triggered 'if the insurance policy *conceivably covers*

2    allegations' in the complaint." *Osborne*, 356 F. Supp.3d at 1091 (quoting *Am. Best*

3    *Food*, 229 P.3d at 669) (emphasis in *Am. Best Food*). In other words, "if there is

4    any reasonable interpretation of the facts or the law that could result in coverage,

5    the insurer must defend." *Am. Best Food*, 229 P.3d at 696. If the existence of the

6    duty to defend cannot be determined from the face of the complaint, "the insurer

7    must investigate the claim and give the insured the benefit of the doubt." *Truck Ins.*

8    *Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 282 (2002). An insurer "must defend

9    until it is clear that the claim is not covered." *Am. Best Food*, 229 P.3d at 696. And

10   "[i]f the insurer remains uncertain, the insurer must provide a defense under a

11   reservation of rights while seeking a declaratory judgment that it has no duty to

12   defend." *Osborne*, 356 F.Supp.3d at 1091.

13   "[I]t is an insurer's affirmative duty to investigate a claim before it denies

14   coverage." *Aecon Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227, 1236 (W.D.

15   Wash. 2008); *see also Coventry Assocs. v. Am. States Ins. Co.*, 961 P.2d 933, 938

16   (1998) (the duty of good faith "require[s] the insurer to conduct any necessary

17   investigation in a timely fashion and to conduct a reasonable investigation before

18   denying coverage."). Thus, it is "not the insured's duty to continue supplementing

19   the record to an uninquisitive insurer." *Aecon*, 572 F. Supp. 2d at 1236. That is, the

20   burden is on the insurance company to investigate a tender and "clarify the matter

ORDER REGARDING SUMMARY JUDGMENT MOTIONS – 24

before denying coverage." *Osborne*, 356 P.3d at 1095. Moreover, "[a]n insurer may not fail to conduct a reasonable investigation simply because it appears initially that the loss is not covered." *Fireman's Fund Ins. Cos. v. Alaskan Pride P'ship*, 106 F.3d 1465, 1470 (9th Cir. 1997).

Finally, if there is any "legal uncertainty" regarding an insurer's duty to defend, that "uncertainty works in favor of providing a defense to the insured." *Am. Best Food*, 229 P.3d at 698.; *see also id.* at 700 ("failure to defend based upon a questionable interpretation of law was unreasonable").

### 2.    Bad Faith and Coverage by Estoppel

An insurer's wrongful denial of insurance coverage is ordinarily remedied through traditional contract damages. *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (1998). However, when the insurer's conduct is in "bad faith," the denial of insurance benefits is itself tortious. *Id.* To prevail on a claim of bad faith, an insured must show that its insurer breached a contract for insurance, and that such breach was "unreasonable, frivolous, or unfounded." *Id.* An insurer acts in bad faith when it relies on an "arguable legal interpretation of its own policy" or a "questionable interpretation of law" to deny a tender of defense. *Am. Best Food, Inc.*, 229 P.3d at 700. In contrast, bad faith is not shown when a refusal "is based upon a reasonable interpretation of the insurance policy," even if that interpretation is ultimately

incorrect. *Kirk*, 951 P.2d at 1126 (citing *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 760 P.2d 337, 347 (1988)).

When an insurer denies a tender of defense in bad faith, Washington law requires that it be estopped from refusing to indemnify any liability eventually assessed against the insured on the claims the insurer refused to defend. *Id.* at 1127–28; *Woo v. Fireman's Fund Ins. Co.*, 161 Wash.2d 43, 164 P.3d 454, 463 (2007). In other words, a bad faith refusal to defend "creates liability for the insurer to pay at least policy limits for any claim that should have been defended but was not." *Woo*, 208 P.3d at 564. The "coverage by estoppel" remedy is intended to create "a strong incentive for the insurer to act in good faith, and [to] protect[ ] the insured against the insurer's bad faith conduct." *Kirk*, 951 P.2d at 1128.

### 3. Security National's Duty to Defend

Based on *T-Mobile USA*, there was a "reasonable interpretation of the facts the law that could result in coverage," triggering Security National's duty to defend. *Am. Best Food*, 229 P.3d at 696. First, it is a reasonable interpretation of the facts and law that Alliant acted with actual, or at least apparent, authority when it sent the 2019 Certificate of Insurance. The Agency Company Agreement between Alliant and Security National gave Alliant the authority to "issue certificates of insurance reflecting validly issued insurance policies." ECF No. 139-7 at 2. That is exactly what it did in sending the 2019 Certificate of Insurance. And the case for

apparent authority is stronger, as Alliant had in the past issued such certificates directly to Construction Associates. *See* ECF No. 140-2 at 2–11. In doing so, Alliant signed the certificates as Security National's "Authorized Representative." ECF Nos. ECF No. 140-2 at 2–11; 140-3 at 2. As in *T-Mobile USA*, this is sufficient to establish apparent authority.

It was also a reasonable interpretation of *T-Mobile USA*—in fact it is this Court's interpretation of that decision—that when Alliant, acting with actual or apparent authority, makes a representation in the 2019 Certificate of Insurance that Construction Associates is covered as an additional insured to Merit Electric's policy, Security National is bound by that representation, even if there is general disclaimer language in the Certificate of Insurance or the policy. *See* 450 P.3d at 416. As such, Security National had, at the least, a duty to defend until it could obtain a declaratory judgment stating that it had no obligations to Construction Associates under the policy.

### 4. Security National Acted in Bad Faith as a Matter of Law

The Court finds that Security National acted in bad faith as a matter of law because its denial and determination that it neither had the duty to defend nor indemnify was based, initially, on an inadequate investigation and, later, on "arguable" readings of the policy and "questionable" interpretations of Washington law. As an initial matter, the Court considers the relevant investigation period to be

the time of tender—October 3, 2019—to the time of Security National's December 3, 2019 denial. During this time, Security National conducted an investigation that failed in at least two respects. First, Mr. Leondiris did little-to-no investigation regarding why the 2019 Certificate of Insurance was issued. *See* ECF No. 224 at 6. Instead, the adjustors were content to rely on their own (erroneous) knowledge of the applicable law concerning Certificates of Insurance. *Id.* ("The Certificate that was provided is for information only and confers no rights."). Second, and most significantly, Security National and Alliant failed to look for and account for published case law directly on point, which is especially troubling given the multiple notations in the file that Washington coverage counsel may be required. *See* ECF No. 159-1 at 2, 12. Had the adjustors performed such a search or obtained local coverage counsel, they would have encountered the *T-Mobile USA* decision. Instead, Mr. Leondiris ultimately drafted a denial letter on November 13, 2019, that took into account little more than the items included in the tender letter and at least one WAC provision. *Id.* at 42. On December 3, 2019, still unaware of relevant case law, he sent the denial letter to Construction Associates. *See* ECF No. 159-2.

Security National pushes against this criticism with two arguments that bear mentioning. Security National protests that claims adjustors cannot be expected to know the law and perform legal research, and Security National emphasizes that

*T-Mobile USA* was decided after the tender. Neither of these arguments are sufficient for the Court to excuse the lack of a reasonable investigation.

True, the adjustors are not attorneys in Washington and are presumably not trained in the same kinds of legal research techniques as lawyers. But that does not excuse an adjustor from having a at least a baseline understanding of the relevant state's law necessary to carry out their duties. Instead, it means insurance companies must undertake what in practice are reasonably small steps to ensure adjustors are equipped to make reasonable coverage and defense determinations. Such steps could include teaching adjustors to run case searches or, more likely, supplying adjustors with subscriptions to relevant legal newsletters, a resource most attorneys rely on to keep apprised of legal developments. Regardless, ignorance of the applicable case law, even of a relatively new case law, does not excuse the conduct of adjustors who deny defense or indemnification. Doing otherwise would allow insurance carriers to intentionally stay ignorant and hide behind their ignorance when their claim denials are challenged. Adjustors must equip themselves or else seek out those with the requisite tools and knowledge.

Nor is it accurate to characterize *T-Mobile USA* as an opinion published so recently that the claims adjustors would not have had a reasonable opportunity to discover the opinion. *T-Mobile USA* was, as insurance law decisions go, a blockbuster. The Ninth Circuit certified the question the Washington State Supreme

Court on November 9, 2018. After briefing from the parties and amici curiae, the justices of that court heard oral argument on May 16, 2019. The Court's opinion was ultimately published on October 10, 2019, which as Security National emphasizes repeatedly *is* after the tender of defense. But that is not the relevant comparison. The relevant comparison is to the date of denial, which is December 3, 2019, meaning Security National had over fifty days in which to do the smallest amount of research into caselaw in Washington State or else consult coverage counsel. Instead, it did next to no research on the applicable law in Washington State.

And even if the Court were to broaden the scope of its analysis to encompass the entire investigation, to include the period from December when Security National affirms its denial of the tender, Defendants would be entitled to summary judgment regarding bad faith. This is so because, even after further investigation and an awareness of *T-Mobile USA*, Security National relied on arguable interpretations of its own policy and questionable and strained interpretations of the law to avoid providing Construction Associates with a defense. *See Am. Best Food, Inc.*, 229 P.3d at 700. As such, Defendants are entitled to coverage by estoppel. *Kirk*, 951 P.2d at 1127–28.

//

//

ORDER REGARDING SUMMARY JUDGMENT MOTIONS – 30

Accordingly, it is hereby **ORDERED**:

**1.**    Plaintiff Security National's Motion for Partial Summary Judgment re 2019 Certificate of Insurance, **ECF No. 134**, is **DENIED**.

**2.**    Defendant Mark and Jennifer Wilsons' Motion to Strike, **ECF No. 137**, is **DENIED**.

**3.**    Plaintiff Security National's Motion for Partial Summary Judgment (Bad Faith), **ECF No. 157**, is **DENIED**.

**4.**    Defendants Mark and Jennifer Wilsons' Motion for Summary Judgment, **ECF No. 162**, is **GRANTED**. The Court finds that Mark and Jennifer Wilson are entitled to summary judgment as to the following counterclaims: [3]

    ***A.***    Second Cause of Action—the claim under the Consumer Protection Act regarding WAC 284-30-330(4) for failure to adequately investigate Construction Associates' tender;

    ***B.***    Fourth Cause of Action— the claim that Security National acted in bad faith in conducting its investigation and denying the tender of defense; and

    ***C.***    Sixth Cause of Action—the claim for coverage by estoppel.

---

[3] *See* ECF No. 21 at 22, 25–28.

ORDER REGARDING SUMMARY JUDGMENT MOTIONS – 31

**5.** The Defendants' motions to strike and for sanctions regarding Mr. Leondiris' declaration, **ECF Nos. 185 and 189**, are **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 24th day of March 2022.

SALVADOR MENDOZA, JR.
United States District Judge

ORDER REGARDING SUMMARY JUDGMENT MOTIONS – 32